Ms. Prelogar. Mr. Chief Justice, and may it please the Court, over the past century, this Court has found a lack of jurisdiction under the Rooker-Feldman doctrine in exactly two cases, Rooker and Feldman. In both, the plaintiffs sought to challenge a final decision from a state high court, and both cases held that Section 1257 gives only this Court jurisdiction. In both cases, the plaintiffs sought to challenge  that kind of judgment. Most recently, the Court said the Rooker-Feldman doctrine should be confined to cases of the kind from which the doctrine acquired its name. Yet lower courts haven't heeded that message. Some continue to apply a jurisdictional bar far beyond Rooker and Feldman. But the correct rule is this. Rooker-Feldman applies only to cases that seek review and rejection of final judgments of state high courts. That rule follows the rules from text, history and structure. On text, Section 1257 is the statutory hook for the doctrine. That statute gives this Court jurisdiction over final judgments of state high courts, and so by negative inference denies the same jurisdiction to district courts. But Section 1257 says nothing at all about district court jurisdiction when there's no final judgment of a state high court. On history, district courts have long heard collateral attacks on state lower court judgments in narrow circumstances. Neither Rooker nor Feldman silently overturned that historical practice. And on federal court structure, our rule respects doctrines like preclusion, abstention and the Anti-Injunction Act. Those doctrines already weed out duplicative cases. There's no good reason for Rooker-Feldman to broadly supplant them. Respondent's rule finds no support in text, history or precedent. It would untether Rooker-Feldman from Section 1257. It would override historical practice and state preclusion rules. It would transform a narrow doctrine into a sweeping jurisdictional bar. And it would amplify confusion and complexity when jurisdictional limits should be clear and grounded in statutory text. The Court should reject that vast expansion of Rooker-Feldman. I welcome the Court's questions. If we could just take a step back, does a district court have appellate jurisdiction? No. District courts can only exercise original jurisdiction. Now, what — is there any difference between a district court reviewing a final decision, say, of an agency or a private organization, as opposed to reviewing the final judgment of a court? Yes. There are critical differences, because if a district court is reviewing a final decision of a court in a collateral challenge, it can't actually take any action with respect to that state court judgment. So, for example, it can't vacate it. It can't revise the terms of it. That's a substantial difference from the type of remedy that would be available when a district court is, for example, reviewing an agency action. So is — I think the — isn't the argument here or the petition — the action here to undo a previous action of a district court and void as — from ab initio? I think that's the language that's used in the complaint. So it's — it's an effort to collaterally attack that judgment, Justice Thomas, and we don't dispute that point. But that is fundamentally different than an exercise of a — So how different — how would it be different from an appeal? Sure. So there are numerous ways. When you have a case on appeal, it's a continuation of the prior case. You're limited to the record that was developed below. You can take action with respect to the judgment that was rendered, so you can actually vacate it or set it aside with respect to the world at large, so it binds no one. And critically, you can relitigate issues. There's no potential preclusion bar on appeal. And in all of those respects, a collateral attack is different. It's a new case. It's not a continuation of the prior case. The record isn't formally transferred over. You can take new evidence and adjudicate the issue. You cannot actually take any action to vacate that judgment or do anything other than declare the rights of the parties before you. So the most we could get in a collateral challenge is a declaration or an injunction that prevents enforcement by the parties named in the Federal case, but it wouldn't wipe the decision off the books. And critically, doctrine-like — doctrines like preclusion could come into play in a collateral attack and do a lot of the work to prevent relitigation when that shouldn't occur. Sotomayor. I'm sorry. Tell me what the value is to having a Federal district court and a State appellate court simultaneously reviewing a State court judgment. What's the value in that? The value is that the Federal district court is not limited by the record below, is required to take new evidence to determine what Maryland State law is, because as I look at your — as the complaint here, you brought a Federal due process claim, but you rely primarily on Maryland State law. You're — you're asking us in an action to decide whether there was duress, as defined by Maryland State law, whether the Maryland Declaration of Rights gives any rights to the plaintiff that were violated. And you are asking for the consent order to be declared void and unenforceable. So how is — I don't understand why that's more valuable to separation of powers questions as — as in terms of how we respect — how we respect State law judgments. So I think there are two principal values here, Justice Sotomayor. One is the fact that we have a dual system of State and Federal courts, and so as Chief Judge Sutton said in the Vandercott case, it's a national litigation reality that frequently there will be parallel litigation considering precisely the same issue. But yes, that's when there hasn't been an attack on a State court judgment, because you're not relitigating the rights — the Federal and State rights that issue. You're asking us just to exercise appellate jurisdiction. You dropped all of the cases that were parallel to the State case, correct? So there are still some pending cases, but it's true that many of the States — I think it was the habeas case that remained. The case — And in that case, you're asking us only to review the State law question. You're not asking us to relitigate or have parallel litigation on the original issue. There I could see the value, because you want two courts to be looking at this and giving us their views on it. But that's not what you're doing here. You dropped all the other litigations. So there is a significant value in ensuring that Federal courts are available to vindicate Federal rights, including when State court judgments themselves give rise to that kind of constitutional violation. And here we are asserting a Federal- Oh, but you do have a Federal right to go to the Supreme Court. And what Congress recognized in creating jurisdiction under 1331 and 1343, this was part of the 1871 Civil Rights Act. The civil rights jurisdiction was vested in the State court. So Congress went in with its eyes open to the idea that these grants of Federal jurisdiction would provide an opportunity for litigants who were not able to achieve justice in State courts, including through State court judgments themselves that violated constitutional rights, to come to a Federal forum. Now, the States who have agreed with you that it's only final judgments that Rooker-Feldman applied to, they're not really limiting themselves to 1257. They are saying if they're defining final judgment in very different ways, if a final judgment has been rendered by the State appellate courts, if the State action has reached a point where neither party seeks further action, for instance, the losing party allows the time for appeal to expire, and if the State court proceedings have finally resolved all the Federal questions in the litigation, but State law or purely factual limits remain, that's not anything covered by 1257. It's broader than 1257. So the seven circuits on our side of this split have all required at a minimum that the State litigation... At a minimum, but they add other definitions of final. Some of them have a broader conception of finality, and we think that the best source to look for a jurisdictional rule comes from the text of the statute... So why aren't we looking to what State law says? State law treats a trial court's judgment as final, just like a district court's final judgment is final, even when it is on appeal. So why isn't that final for our purposes? Well, for purposes of identifying jurisdictional rules, this Court has already – has always looked to acts of Congress. Under modern precedent, the Court has said there's no free-floating ability of the courts to simply pluck a jurisdictional rule out of thin air. District courts instead have a virtually unflagging obligation to exercise the jurisdiction Congress has given them. And so the right source to look for the rule is section 1257, which is where this Court has always... But as Justice Thomas started our conversation, this is appellate review. This is not deciding a cause of action under Federal or State law. So let me try to be directly responsive to that, because I think it's not remotely possible to characterize the Worker-Feldman Doctrine as suggesting that all collateral attacks are automatically an exercise of impermissible appellate review. For one thing, that would make section 1257 entirely irrelevant to the analysis, because as I said to Justice Thomas, we of course concede that district courts can only exercise original jurisdiction. If, in fact, a collateral attack was an impermissible appeal, you don't have to consult 1257 at all. But that runs counter to this Court's repeated recognition, including in Exxon, that section 1257 is the doctrinal foundation for where the Worker-Feldman rule comes from. You mentioned Exxon, and of course Judge Hyten's put emphasis on the sentence in Exxon, the we hold sentence, that did not articulate the rule in the way you do it today. So I guess my question to pick up on Justice Sotomayor's questions is, why not stick with what we said in the we hold sentence in Exxon, given that it would be problematic to have Federal and State court parallel litigation to increase it? As you rightly said, there is Federal and State court parallel litigation, but why add to it unnecessarily? Why not just stick to the we hold sentence and be done with it? Again, if we were starting anew, maybe your position would have more force, but given what we said in Exxon and given what Justice Sotomayor raised, it's just a question. This issue wasn't directly presented in Exxon, of course, because as you noted, Justice Kavanaugh, it was just parallel litigation. And so I don't think it would be appropriate to read that sentence as explicitly thinking about the situation of what kind of State court judgments could qualify and resolving that issue against us. And in fact, if you look at the rest of the Exxon opinion, its analysis powerfully supports the argument we're making here. Because first, Exxon said that 1257 is the doctrinal underpinning of Rooker-Feldman, and our rule coheres with the text of that statutory provision, final judgments of State high courts. The second thing the court did in Exxon is recognize that lower courts had interpreted Rooker-Feldman far too broadly. The court said this is a jurisdictional rule, it's a narrow limitation, and henceforth the Rooker-Feldman bar should only apply to cases that are like Rooker and Feldman. And then it described those cases. And this Court recognized in Exxon that in each of them, it was a situation where the losing party in State court sought to challenge a final judgment of a State high court, thoroughly within 1257. Alito Is there any rational basis for that distinction? Yes. I think the rational basis comes from the text of Section 1257. From 1257. But suppose I don't think that Rooker-Feldman is based exclusively on 1257, but is based in part and perhaps primarily on the fact that district courts are not appellate courts. Then what? So I think that at that point, it would be necessary to look not only at Section 1257, but also to consult history. One of the reasons why I think it's not appropriate to understand Rooker-Feldman to say that all collateral attacks are inevitably impermissible appeals is because we have a long history and tradition in this nation of Federal courts exercising their original jurisdiction to consider that kind of attack when it's on a lower court judgment. We cite at page 11 of our reply brief, Smith v. Apple, Simon v. Southern Railway, Wells Fargo v. Taylor. In Smith v. Apple, this Court specifically recognized that the district court had jurisdiction to consider the collateral attack on the State court judgment. It's just that there were other doctrines there, the Anti-Injunction Act, the Barter Remedy. Reading between the lines, I take your real position to be that Rooker-Feldman ought to be overruled, and maybe there are members of the Court who would like to do that, but that's not before us here, right? Our primary argument is that it's not necessary to overrule it. It just shouldn't be vastly expanded. But if we're going to limit it, it has to be limited on some rational basis. And I don't really see a rational basis for drawing a distinction between a case where the State court proceeding has concluded and a case where the State court proceeding is ongoing. I mean, in Rooker, the individual's name began with an R. And in Feldman, the individual's name began with an F. So here, the individual's name begins with a T. I mean, could we say, well, we're not going to go any further than Rooker and Feldman, so this case doesn't qualify? I don't think that Exxon quite went that far, but it did try to make clear that it was a narrow doctrine that should not extend beyond the facts of those cases. And the reason why we think there is a relevant difference and a logical one, Justice Alito, is that Congress in 1257, we understand it to have been channeling claims. If you have a State high court judgment, then only this court can review that kind of judgment. And so by negative implication, the district courts can't. Section 1257 doesn't say anything about these lower State court judgments, and so it leaves undisturbed. But you don't have the channeling, if you're right. I mean, what concerns me about your argument is that it seems to undermine what Congress was trying to do in 1257, which, as you just said, was, I think, to have the State courts be the primary original arbiters of these kinds of things and to channel them all up through the State appellate system until we get to the point of a State high court judgment that is then reviewable by the Supreme Court. The problem, I think, with suggesting that collateral attacks can occur by the Federal district courts along the way is that it seems to undermine the channeling that was the whole point of 1257. So I disagree strongly with the idea that there was a desire by Congress to say that Federal courts writ large can't exercise jurisdiction to adjudicate Federal rights. Those grants come from 1331 and here for civil rights, 1343. That's not what I was saying. What I was saying is that Congress was establishing an order of operations. To the extent that we have the Supreme Court of the United States waiting until the State courts have exercised their jurisdiction and made their determinations, then fine, the Supreme Court will come along at the end of the day, says Congress, and make those kinds of determinations. What you're suggesting is that collateral attacks on the basis of the Federal issues can be occurring all along the way as the State court is adjudicating this. And I just don't understand how that's consistent with the system that 1257 seems to envision. So I think that that inference, that section 1257 is meant to occupy the field, is more weight than it can bear. Jurisdictional rules are supposed to be clearly expressed, and all that 1257 says is that this Court may exercise jurisdiction over State high court judgments. But the statute doesn't say anything about lower court judgments. And I want to be responsive to this. On that, I just want to follow up on that before you leave that point. I guess I expect Ms. Blatt to come up and say, well, okay, let's talk about 1257. And you're right. It only authorizes us to hear appeals from high courts. And so that's a negative implication. But maybe another negative implication of it is we can't hear anything from lower state courts. And so isn't that negative implication worthy of respect, too? So I think that that is a far broader negative implication. Sure. Because it doesn't actually hang on any text in section 1257. And Rooker-Feldman is already at the outer bounds of how this Court thinks about  I hear you on that, okay? And let me explore that for a second. So I know your client doesn't want to probably admit that all the claims here are precluded by issue and claim preclusion. But your friend on the other side is going to argue, oh, we have to have Rooker-Feldman to protect federalism and State courts. But would you concede that artful pleading can't get around issue and claim preclusion principles? Yes, exactly. And it's an important point, Justice Gorsuch, because a lot of the concerns that have been raised about collateral attacks or having federal courts come in and regularly superintend State courts are directly addressed by preclusion doctrine and by the Anti-Injunction Act in many cases. And there's always abstention doctrines as well as a backdrop. Why are those back at I'm sorry, just a few more. I'm almost done. And then the weird thing about Rooker-Feldman is it strips us of jurisdiction to even consider those kinds of questions. That's right. And it actually runs counter to federalism values insofar as it does so, because under the full Faith and Credit Act, federal courts have to apply State law rules of preclusion. So that's a gauntlet you have to run. And some of those are going to be lower, apply to lower courts. Some are going to have to wait until later. They're all different. Exactly. And it's only a very narrow circumstance where you can raise this kind of collateral attack to a State law judgment. There's a preclusion principle called the collateral attack rule. Maryland recognizes it. And it generally bars collateral attacks like this one with only very limited exceptions that are reflected in the restatement second of judgment, 69 and 70. Last one, and then I'm done. Give me your best shot for overruling Rooker-Feldman. I know it's in your brief. I know you don't want to talk about it primarily, but I want to hear him. Sure. Sing a few bars for me. We think that Rooker-Feldman is egregiously wrong. It's out of sync with modern precedent about how the court articulates jurisdictional rules. District courts are supposed to exercise the jurisdiction that Congress gives them, and the court doesn't have a free-floating judgment power to take away jurisdiction where it exists. So the relevant place to look is in statutory text. And if you look at Section 1257, all it does is say that this court may exercise jurisdiction. It doesn't say that district courts are forbidden from doing so. That's even with respect to the category of judgments this Court can review. I'm sorry, Justice Kagan. No, no, no. Please. If you look at you said preclusion principles, abstention principles, anti-injunction act, why did those create a more sensible system? You know, if you figure that they will operate a good deal of the time, why should we look to those various mechanisms rather than this kind of flat rule of Rooker-Feldman? There are two reasons to prefer those doctrines. The first is that they're directly tailored to this kind of situation. So they're intended to mediate between overlapping jurisdiction and make sure that there's a sensible order of operations. The collateral attack rule is specifically designed to deal with collateral attacks on prior state court judgments. And so they're specifically designed for this task. And under the Full Faith and Credit Act, it advances principles of federalism to give effect to state law rules of preclusion in the first instance rather than to have this heavy-handed jurisdictional rule that's going to come in and supplant all of those state law judgments about when claims should and shouldn't be precluded. And that's actually the second reason. The court has said that jurisdictional rules are strong medicine because they carry all the consequences of not being hinged to party presentation. The court has to consider them sua sponte, so there's no waiver or forfeiture. They can be inefficient because you might realize it at the end of the case and then have to undo everything that came before. And critically, you have to resolve them first. So you can imagine a situation where there might be a very easy basis to conclude that this particular suit is precluded under state law. You're not going to be able to make out your claim at the end of the day. But the Rooker-Feldman issue is quite complicated, and it has confounded the lower courts in thinking about exactly what it means to review and reject a state court judgment and when it qualifies. And in every case —  There are a lot of things that have confounded the lower courts on Rooker-Feldman, but I'm not sure that this question necessarily is one of them. And I can understand a point of view that says, like, look, what we said in Exxon was this far and no further, and we're tired of this. But Justice Alito also has a point that to sort of, you know, draw the line here is — you know, it's not what's created the confusion, really, is this line. So I agree that our rule is not going to totally clear up all the confusion in the lower courts, but I think it's going to go a long way towards solving part of the problem. It creates an easy gatekeeping measure at the outset. You say, is this the kind of state court judgment that falls within 1257? Is it a final judgment from a state high court? If the answer is no, as it clearly is here, you don't have to think about Rooker-Feldman again. And so it's going to, at the front end, I think, weed out a lot of cases and mean that you don't have to go on to some of those more complex questions in other cases. Ms. Prelogger, there's a distinction between saying subject to further review or high court. Have the lower courts, who are, you know, more on your side of the split, tied it to that state, you know, highest court, the apex court, from which we would have a distinction under 1257? Or have they said kind of this line, subject to further review, like appellate proceedings are ongoing? Which is your situation here? So they have, many of them, adopted a view that if the state proceedings have ended conclusively, for example, you failed to seek review from the state high court, then it's possible that Rooker-Feldman can apply. Our view is that to be faithful to Section 1257, it really should be limited to decisions from state high courts and that doctrines like preclusion or the way, if you don't seek your reviews all the way up through the state court system. How many lower courts have gone as far as you in drawing the line there, the apex courts? So we have, we ultimately have seven courts on our side on the question of whether you can have Rooker-Feldman when there are state court proceedings ongoing. With respect to those that have limited explicitly to state high court decisions, I don't know that we have a court that's gone that far. There was a very influential First Circuit decision that had a slightly broader conception of finality. But regardless, we win under the rule of those seven circuits because here there's clear state court proceedings ongoing. Why pick your rule instead of the proceedings ongoing? So I think that our rule is more consistent with the text of Section 1257. Now, I acknowledge there is a lot of language in Exxon that talks about in describing Rooker and Feldman themselves that the state court proceedings there had ended, but also talked about how what was being reviewed was a final judgment of a state high court. So I think there's kind of language potentially in Exxon to support both of these positions, but that our rule is most consistent with the statutory grounding for the rule. As Justice Alito said, the high court point of it really wasn't the key, because if it was, I think they would have just said that in Exxon. I mean, it — Well, no one briefed it, Justice Jackson. It just wasn't relevant in Exxon because there wasn't any state court judgment at all. So I think, you know, to put myself in the shoes of the Court at that moment, they might not have been thinking about this follow-on question, but the clear import of Exxon is this doctrine has been wildly expanded in the lower courts and that shouldn't happen anymore. And we're seeing a repetition of that now with the lower courts consistently bringing up Rooker-Feldman in cases that we think are far afield from the facts of those cases. Why is it fair to assume from 1257, which, as you've said, says that no Federal court can review judgments from the highest court other than the Supreme Court, why does that necessarily mean that Federal district courts can review state court judgments from lower courts? I just see this as an enormous leap. I'm sorry, Mr. Chief Justice, can I keep going?  I see that as an enormous leap, and I'm just trying to understand your assuming that. Of course. So our argument is not that the district court jurisdiction comes from 1257. It's that it comes from 1331 and 1343. Those are broad grants of Federal question jurisdiction and civil rights jurisdiction, and here we're raising a Federal question and a 1983 claim. Then the question becomes, does section 1257 do anything to withdraw part of that jurisdiction? That's how the court put it in Exxon. It said, what Rooker-Feldman does is it operates by negative inference from 1257 to take away from district courts claims that they are otherwise empowered to adjudicate. So I think that's how you get to our rule. The text of section 1257 withdraws only jurisdiction over final judgments from state high courts based on this inference that those judgments are given to this court alone to review. Thank you, counsel. Justice Thomas. Justice Alito. You didn't mention to Justice Barrett Feldman footnote 16, which you call dicta. But whether it's dicta or not, it does say that your limitation to final decisions on the legal issues is not necessary. No, I think that footnote is consistent with our position. It's hypothesizing a situation where you do have a final judgment from a state high court. That's our rule. And that footnote was directed to a situation where the Federal question hadn't been raised. And what the footnote said is in that situation, Rooker-Feldman can still operate as a bar. But that's consistent with our rule. But they could have relied on issue preclusion or claim preclusion principles, but they didn't. They said that Rooker-Feldman could still apply. Because I think that they were drawing the inference from section 1257 that even if there might be other reasons this court doesn't grant cert, you know, maybe there's no Article III standing from the petitioner if it came up in state court, or maybe there's an adequate and independent state ground, that's not enough to conclude that there's no Rooker-Feldman bar. But the absolute indispensable requirement, which was present in footnote 16, is final judgment of a state high court. And I want to touch on this idea of preclusion, Justice Sotomayor, because you have asked about why it would make sense to have collateral review. Again, we think that there is going to be a real narrowing of the opportunities for collateral attack under those preclusion principles. But it's important in situations to have access to a Federal court where it can apply those state laws of decision. And having a jurisdictional bar come in at the outset is going to displace all of that analysis. Roberts. And what do you make, Ms. Prelager, of the references to 1331? 1257 is obviously the predominant rationale. But going back to Rooker, and then in Verizon Medicaid, there's a sentence that's then quoted in Exxon itself, which suggests that there's this sort of second rationale for it, which is based more on 1331 in the difference between original and appellate jurisdiction. Now, if you thought that that was the rationale, presumably you wouldn't need 1257, so why bother talking about that? But it is a little bit odd, right, that in addition to the 1257 language, there's this second strain, if you will, which focuses more on 1331. So I have been rereading and reading those sentences about appellate jurisdiction. And I think maybe what the court was aiming at in that language is the idea that you do need to have a litigant seeking review and rejection of a state court judgment. So something that's kind of akin to appellate-like review where the court has said, in substance, you know, something that looks similar to what you might get on appellate review. And maybe that language was meant to codify this separate requirement for that review and rejection. But I think it's not tenable to read those stray sentences as instead suggesting that a collateral attack is automatically appeal because that would be inconsistent with the Section 1257 rationale, as you just articulated. It would also be flatly inconsistent with history. There are any number of occasions when federal district courts have entertained collateral attacks on state court judgments that's never been thought of as an impermissible appeal. The same can be true with federal judgments. You know, sometimes federal courts are asked to review collateral attacks on preexisting federal court judgments. No one says that Rooker-Feldman could come into operation there or that that's an appeal. And it's also just inconsistent with the actual reality because there are so many differences between appeals and between collateral attacks, both with respect to the remedy you can get and with respect to the application of preclusion doctrine. Thank you. Justice Gorsuch. Yeah, I've never really understood that rationale, the appeal rationale, because litigants are sometimes vexatious. Now, I'm not accusing your client of that. But they repeat suits all the time, sometimes in the same state court, sometimes in a different state court, sometimes in a federal district court, sometimes between two federal district courts, sometimes between two federal district courts in two different states. And all of those we handle under preclusion and we don't accuse the court, the second court, of exercising any kind of appellate review over the first court. Help me. That's exactly right. And it just demonstrates that there's no need to have a dramatically expanded domain for Booker Feldman to deal with concerns about managing competing or overlapping litigation or parallel disputes like that. Claim preclusion is going to knock out a lot of those cases because if you could have raised the claim in the prior suit, then you can't raise it here. Issue preclusion, if it's actually litigated, is likewise going to operate to prevent relitigation of some of the issues that were actually decided. And then critically, this collateral attack rule is directly relevant here because it comes into play when you have a preexisting judgment and there are only very narrow circumstances like fraud, duress, or a lack of jurisdiction in the underlying court where you might be able to get that kind of judgment set aside. But in no instance is any of that an impermissible exercise of appellate jurisdiction. Roberts. Justice Kavanaugh. If we think 1257 and 1331 don't dictate an answer and we look at Exxon and it doesn't dictate an answer and we're just trying to figure out, okay, this is a judge-created doctrine, what makes the most sense here systemically? Why does your position make more sense if it's going to create lots of duplicative litigation in federal and state court that by your own admission is usually going to fail because these other doctrines are going to toss it all out anyway? Your position seems to be let's make sure the federal courts are open just so the federal courts can toss it out on other grounds. So do you want to address that systemic question? Sure. So I think that systemically it is better to rely on the preexisting doctrines like preclusion, abstention, and the Anti-Injunction Act in part because it can advance federalism interests insofar as it gives effect to state law judgments about exactly when preclusion should apply. Our particular suit is not precluded because Maryland has made a judgment that if you entered into a consent decree pursuant to duress, you should be able to challenge that. And yet under Respondent's Rule, the federal courthouse doors would be entirely closed to that kind of claim and that disturbs interests in federalism. It also disturbs interests in respecting the lines that Congress has drawn both through the Full Faith and Credit Act, which is what gives effect to state law judgments, and with the Anti-Injunction Act, which is likewise meant to try to address the situation and determine when federal courts can and cannot enter remedies with respect to state court proceedings. And here again Respondent's Rule would supplant that. And if I don't have you convinced with those two arguments, let me just add that there is a real problem with doing this through jurisdiction insofar as the Rooker-Feldman question might be very difficult and the preclusion issue might be simple. And this rule would vastly expand the circumstances when district courts are going to have to do that complex analysis and think about whether it's review and reject or whether this is actually a state court loser where there are any number of circuit splits, when it might just be very simple to say this is a precluded case and so we can reach the merits and dismiss it on that ground. More specific question. The American Medical Association amicus brief says your position is going to limit medical malpractice claims to pursue parallel litigation, run up insurance costs, create diverging costs of health care. I just want to make sure you've responded to that amicus brief. Yes. So that amicus brief ignores entirely the application of preclusion doctrines and many of the circumstances that the amicus brief touches on are ones where we think there would be obvious bars based on claim preclusion and issue preclusion. So our argument is not that litigants should always be able to get a do-over and be able to succeed on a collateral attack. But at the same time, there is a strong constitutional value in giving effect to Congress's judgments about the federal court jurisdiction and in assuring that there is a federal court forum at the end of the day to adjudicate that claim. Thank you. Justice Barrett. Just one question. Under your theory, what would happen if the case was actually on review in this court and then the litigant also filed a collateral attack in a district court? So I think that at that point, if it's actually on review in this court, then it's a final judgment from a state high court. And therefore, the collateral attack couldn't go forward under Rooker-Feldman because that is the kind of state high court judgment that we agree under the reasoning in those cases creates the bar. Sorry. I guess I should have met, like, your real view that Rooker-Feldman is wrong. So I do think that Rooker-Feldman is wrong. And it means that there wouldn't be a jurisdictional bar to the exercise of district court jurisdiction. But of course, you know, it's not unusual to have district courts sometimes have jurisdiction to consider the same legal issue. And the issue stays, exactly. They don't go on to resolve the dispute when it's before this court. And if it were the exact same judgment that was, you know, being challenged, I can't imagine a district court wouldn't rely on these kinds of abstention-like doctrines to mediate that type of conflict. Thanks. Justice Jackson. So I guess I think that the answer in this case may actually rely on what or relate to what we think the real purpose of the Rooker-Feldman doctrine is. And I've heard you float a couple of theories, and some of them relate to the use of the appellate jurisdiction principle and, you know, is that really what's going on here. But as I read it, it seems as though the court was really trying to advance a certain kind of federalism principle. The court says, if the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the State courts to decide them. And their decision, rather right or wrong, was an exercise of jurisdiction. And so it goes on to sort of underscore this idea that I think is consistent with the 1257 design, that what the court thinks or thought in Rooker was that the State courts should really be given an opportunity to weigh in on these issues, even though they may be federal in nature. And what concerns me, then, about your rule is that I'm wondering whether we're not disincentivizing State court losers to actually proceed in the State system. It seemed as though the court in Rooker was trying to say the State court should have its opportunity, eventually it will go to the high court, and then it will come to the Supreme Court. And if that's really the thrust of it, why would anybody stay in the State system and get all the way to the State high court under your rule, when they could just bring a collateral attack along the way? It just seems to undermine the whole point, in my view. So I have related answers to both prongs of that question. The reason why litigants are going to stay in State court is because they won't face a preclusion bar. They're allowed to litigate their appeal without facing that heavy hurdle of being very strict. But you're assuming that. I mean, there are many situations in which, and I won't go into them, but we looked at Younger, we looked at Colorado. There are certain, there are narrow circumstances in which those preclusion bars actually apply. So it isn't automatic that you wouldn't be able to bring a collateral attack. In fact, I think you think you should be able to bring a collateral attack, which is why you're here. It's certainly true that we're not saying that collateral attacks will never be permissible. I do think in the mine run case, there will frequently be claim and issue preclusion defenses. But let me try to be responsive to the idea that this is all about federalism. Exxon took a look at this as well. And what the court said there is, Rooker-Feldman should not operate as a supersized rule that is meant to override State law preclusion doctrines. Instead, it has a very limited and cap-and-focus that's tied to Section 1257 and tied to the facts of Rooker and Feldman themselves. And it's not meant to be this kind of one-size-fits-all solution to potentially duplicative or parallel litigation and the problems that can ensue with that. So, and as I mentioned before, I think from the federalism standpoint, there really is a value in giving effect to those State law rules of decision. Except if you're a State law, you admit that the State court loser, by the time they get to the high court, Rooker-Feldman applies. So you're saying they're going to continue to litigate, I guess, up until the point that they get to the high court. That's the peculiar thing about your rule, right? I don't understand why you would keep going all the way up to the State court because that's the point that you say that Rooker-Feldman kicks in. Because abandoning your State court appeal means abandoning being able to litigate it without claim and issue preclusion, which really are going to knock out a lot of collateral attacks. In that way. But on the flip side, just thinking about the flip side of the federalism interest is the access to federal courts' interests. And I know that our society has moved beyond 1871 when Congress enacted this jurisdictional grant in Section 1343, but Congress was keenly aware at that time that sometimes State courts were issuing judgments that deprived individuals of their constitutional rights, and it did not want to force them to wait and litigate up through an unjust State court system. It wanted them to be able to get into federal courts.  One more question. As I read the question presented here, it does not enable us to look at overruling Rooker-Feldman. That was not a question presented here, and what was presented seems to assume that the doctrine exists. So is that really fairly on the table? I just want to make sure. So our primary argument, of course, is that the Court should not extend Rooker-Feldman beyond State high court judgments, and the Court could simply say Rooker and Feldman involved final judgments of State high courts. That's what Section 1257 refers to in that case. No, I understand. I'm talking about the overruling that came up earlier.  That's not in the question presented here. So there have been occasions, like in Dobbs, where whether to overrule Roe and Casey was not in the question presented. Citizens United is another example of that. So the Court has sometimes, when it's delved into a doctrine, decided that it makes sense to reconsider precedent. We don't think the Court has to go that far here, but we do think that the question presented should clearly be resolved in our favor. Thank you. Thank you, counsel. Ms. Blatt. Mr. Chief Justice, and may it please the Court. Petitioner agrees that under Rooker-Feldman, district courts cannot review State court judgments if the State appellate process is over. But Petitioner submits that they can review them if the State appellate process is ongoing. Well, that's backwards. The failure to exhaust the State appellate process makes Federal intervention worse, not better. Just like in Rooker and Feldman, both 1331 and 1257 bar this suit. As Exxon explains, 1331 grants strictly original, not appellate, jurisdiction. Petitioner gives no reason why suits seeking to review and reject State trial court judgments are any less appellate than identical suits challenging State high court judgments. 1257 confirms there's no jurisdiction here. 1257 gives this Court appellate jurisdiction over State high court judgments. Petitioner claims that when this Court lacks discretionary appellate jurisdiction under 1257, district courts have mandatory original jurisdiction under 1331. Well, that also makes no sense. 1257 stands for two principles. First, Congress channeled all review of State court judgments to this Court. And second, Congress wanted no Federal review of State court judgments until the State's highest court has had the opportunity to correct any errors. Petitioner's rule flouts that scheme and damages the integrity of the State appellate process. Like Petitioner, litigants could jettison State court appeals and invoke the mandatory jurisdiction of 94 district courts to invalidate State court judgments. I welcome questions. But Petitioner's argument is that, fine, you have the appellate process, but you also have collateral attack process, and they're both legitimate, and they can take place simultaneously. How would you respond to that argument? Well, I would respond to it in three ways. I mean, that was exactly the dissent in Feldman, and the Court obviously did not care what Justice Stevens thought or just disagreed with them. Second, an Exxon footnote 8 says it went and supported our view that said 2254, which authorized collateral attacks, shows that Congress by statute knows how to authorize collateral review of State court judgments. And even there, it seems beyond obvious to point out that 1254 requires exhaustion. So the one time that Congress authorized collateral attacks, it said you had to exhaust State court appeals. Third, we know of no case, and they don't cite any, that says 1331 allows review and rejection of State court judgments. All the cases they cite, which my other side just said, were all before Rooker. Only one was after Rooker that didn't have anything to do with the question presented. All were before Feldman, Exxon, Verizon, Reed, Lance, and Skinner that all said that So I guess our view is, unless you've got a statute, there's no such thing as collateral review of State court judgments, and that's under 1254. Counsel, would you answer the question some of my colleagues have asked? Why not relying on preclusion and those sorts of doctrines is a better course than just relying on Rooker-Feldman? And number two, this is a case where the plaintiff could have continued with her State court appeal, but put it on stay, correct? Correct. So there is a motive to get out of that State court appeal and come here instead, correct? Right. Well, let me just say a couple things about preclusion. I find it highly ironic that a petitioner wants to rely on preclusion in a case where it's conceded preclusion doesn't apply. Preclusion only applies, as my friend said, when the issue has been litigated or could have been litigated. Here, there's a direct challenge to the consent decree that could not have been litigated. It's seeking to void and invalidate it. So like then-Judge Rushing said, and we quoted her article both in our brief in opposition and in our red brief on page 40, she comments that the highest time when you need Rooker-Feldman is this kind of case, where preclusion doesn't apply because you're directly challenging taking a direct review of the State court judgment. And when you don't have preclusion, Rooker-Feldman is absolutely essential to protect the integrity of the State appellate process. The other thing I would say about sort of that's related to this, it's also ironic about this, whatever this is on federal civil rights, she filed three federal cases here. This is one that was a direct challenge, but she filed two others. One was a due process federal court challenge. That was before the consent decree was ever filed. She also filed a federal civil rights lawsuit, as the Fourth Circuit noticed, saying that this violated her federal rights under the ADA and the Rehab Act. And that was, Rooker-Feldman didn't get raised. It was not, you know, dismissed on jurisdictional grounds. It was dismissed on the merits. So as the Fourth Circuit said, you know, you can bring federal lawsuits. You just can't do what this litigant did with the very facts of Rooker, seek to declare a State court judgment void, seek to declare it void admonitio, and seek to enjoin the enforcement. So although Rooker-Feldman almost may never apply, it happens to apply and should apply on the facts of this case.  Ms. Blatt, if I look at Exxon, and this was by a unanimous court and by, you know, I'm just going to say the court's leading proceduralist, Exxon clearly said, you know, we're stuck with Rooker-Feldman, but we sure don't have to expand Rooker-Feldman, and this is the end of it. And whatever you might say about this particular rule, if we issue a decision that goes your way, we are basically saying, forget Exxon. It wasn't the end of it. Rooker-Feldman is alive and well. And in the context of what's happening in the circuit courts, it seems like a very odd message for this Court to be sending in light of Exxon and in light of what I think, you know, if you read Judge Sutton's opinion and say yes, yes, yes, and then we issue a decision that says what you want us to say, like, where would that get us?  Well, let me start with Judge Sutton, and then we'll go back to Exxon, and then we'll talk about the confusion. I'm just going to read from Judge Sutton's latest opinion, the HPIL. Rooker-Feldman stands for the straightforward proposition that lower federal courts may not entertain direct appeals to reverse or modify judgments. At the very end of his opinion, he cites Rooker and notes that seeking to void a state court judgment is an appeal because it attempts to directly reverse state court judgments. He's talking about, I mean, he never refers to the highest court. He's talking about a direct appeal. I do think that Judge Sutton is obviously has a serious concern about it, and that's something he can, you know, take up at the judicial conference. I'm happy to be on a panel with him, with Mr. Chamian or Mr. Preligar, but it doesn't have anything to do with this case. I mean, all those issues could rely on the state's highest court judgment. On Justice Ginsburg. I guess I was asking a broader question. Like, even if I accept what you just said, that it doesn't have anything to do with this case, to rule your way in this case sends a much broader message about what Rooker-Feldman is about and how far courts should do what they're doing, which is applying it in a variety of cases in which they shouldn't be applying it. Yeah. So I'll continue. First of all, the Fourth Circuit was very careful, saying it's been 20 years and they've never seen a Rooker-Feldman case. And just because almost none apply, that doesn't mean, you know, that there can't be one. And so the Fourth Circuit hasn't had any problem. But on Justice Ginsburg. You indicate, though, that they're rare. But all the briefing before us suggests the number of Rooker-Feldman cases have actually increased since Exxon Mobil. Right. But that's true under whatever you do. If you leave Rooker-Feldman as it is, Judge Sutton is still having heartburn because there's people bringing cases that involve the final state court judgment. It's not. I mean, I kind of think if this is a case where we can say, no, really, what we said in Exxon was what we mean. Rooker and Feldman confined to their particular facts, but no further. Then maybe the second time around, courts will get the message. No. And again, let's talk about Exxon and then the three subsequent cases. Justice Ginsburg, before she issues her holding, before she issues a holding, which, as Justice Kavanaugh said, said nothing about state court judgment. She's a very careful writer. 9-0. Presumably. It wasn't in the case. There would have been no reason to address this. Yeah, but I'm going to still read what she said, if that's okay. She said, federal district courts are empowered to exercise original, not appellate, jurisdiction. Rooker-Feldman's complaint essentially invited federal courts of first instance to review and reject unfavorable state court judgments. And then she ends all the stuff that you just cited, it ends with the paragraph that cited Verizon, which you already quoted. So that's on page 291, and the last sentence is, Rooker-Feldman doctrine recognizes 1331 as a grant of original jurisdiction, does not authorize district courts to exercise appellate jurisdiction over state court judgments. And if I can tell you now three, if we care about precedent, I'm going to give you three post-Exxon precedent. This one was an opinion by Justice Kavanaugh in Reed v. Kurtz two terms ago. Rooker-Feldman prevents federal courts from adjudicating cases brought by state court losers challenging state court judgments. And that opinion cites Skinner v. Switzer, state court decisions are not revealed by lower federal courts. And then we have Switzer itself, says you can't have review and rejection of state court judgments. Lance, which is my favorite case, says Rooker-Feldman in effect, the parties there are seeking to take an appeal of an unfavorable state court decision. And I guess I'll go back to my opening. There is no distinction. So all these cases, you might call it sloppy reasoning, but holding is, Exxon says we hold today and it's not limited. When you've described Rooker-Feldman, you haven't limited it to state court judgments and petitioner gives you no When it comes, when you invalidate the judgment issued by state trial court. Well, but the reason is, the reason is that the primary rationale for the doctrine has always been 1257, which doesn't apply to this case. And there's a few strands of, you know, 1331 language that floats around, but it's basically a 1257 rule. And 1257 suggests that we should draw the line in exactly where your friend says to draw it. I think it's an upside down inference to say district courts always have jurisdiction when this court doesn't. It's only upside down for a kind of non-statutory argument. Like why would you in a world without statutes? But that's Rooker-Feldman. But we have a statute and the statute is 1257. And it's 1257 that has grounded this doctrine from the very beginning. Correct. And I think as Justice Gortz has said, there are two negative inferences you can take. Both of them are negative inferences. You have the common sense one that we have, which is 1257 is a channeling statute. It protects federalism by making sure you can only review a state court judgment, the Supreme Court, once the state's highest court has the chance to correct any errors. Or you can take petitioners' non-common sense one is that Congress anticipated whenever you didn't have jurisdiction, federal district courts did. And that's led to the very confusing doctrine that I think Justice Barrett talked about. If you go that route, courts have tied themselves in knots under Cox Broadcasting thinking, well, is this judgment final such that this Supreme Court could review it under Cox Broadcasting? But if it didn't follow under Cox Broadcasting, it wouldn't be. And that's the mess that's on the circuit split. When our rule is just you can't review and reject a appealable state court judgment. And this one, you know, When you say review and reject, you mean void it. Excuse me, void it, which is what she's asking. Exactly. So, yes, our view is that, and we'll take the definition. I mean, it's revises and corrects the judgment of another tribunal and review and reject the two forms of relief in Rooker. One was to void the judgment. And in Feldman, it was to declare the judgment unconstitutional. So you have those exact forms of relief here. So does your rule then turn on the nature of the claim that the party is making or the relief that they're seeking as opposed to something else? I think it's the latter. The, you know, again, the petition didn't challenge that this was an appellate review. Remember, the petition says if we win on this, this, this thing about final state court judgments, it's dispositive. So courts have to decide if there's a review and reject. No, but Ms. Ms. Pregelar says, look, we have this whole other notion of collateral attacks on a judgment that are allowable. And that appellate review is something different. So if we're trying to characterize what's going on here, how do we know whether she's right, that we should call this collateral attack or you're right, that this is really an appellate exercise of appellate jurisdiction of the nature that Rooker is concerned. We disagree with Exxon. The footnote eight, there's no such thing as collateral review unless Congress authorizes. And it did in 2254. And Exxon said that 2254 shows that Congress knows how to authorize collateral review of state court judgments. But if it's review and rejection of a state court judgment, that's an exercise of appellate jurisdiction. And I think I just read you, you know, the five sentences that say when you are, you're outside of 1331 and you're into appellate land, when you're seeking to review and reject a state court judgment. And we don't even think you have to get into this because the petition, the fourth circuit on pages eight, a nine, a 12, a and 13, a explained that this was review and rejection and appeal of a state court judgment. The petition didn't even challenge it, said not one wit in the entire petition that went, that went through that. And then came up with it on this opening brief that this is a collateral review. But if you want to decide that, I would say you decided that in Exxon. I mean, there's just, and then again, the cases, you know, that long history and tradition, it stopped before Rooker. It just stopped. Three of those cases are dealing with scopes of the anti-injunction. Two are in a defensive posture that leaves Huntington. So they have one case that admittedly has nice language for them. It was pre Rooker, pre Feldman, pre Exxon, pre Verizon, pre Lance, pre Skinner. I could keep going pre read. So long history and tradition is one case from 1900. That's old. I mean, that's really old. Let me just check. Could you speak up?  I think I got everything. Could you speak to Ms. Pregelar's suggestion that we should, as a backup, consider revisiting Rooker Feldman? This is not Dobbs. This is not Roe versus Wade. The words egregiously wrong. Don't even appear in their brief. Rooker Feldman is obviously not egregiously wrong. I think it's just as Thomas said in his dissent. It's just a straight line. It's just a straightforward reading of two statutes. But if we're going to talk about overruling precedent, I mean, this case shows why the federal federalism interests are important when a, a petitioner or sorry, a litigant tries to short circuit the state appellate process. It's a blow to federalism. And in seven states, preclusion doesn't even apply until a judgment as after appeal. So preclusion principles would allow in California, Justice Barrett, I think your hypo is this one petitioners rule allows you to go to all the way to oral argument in the Supreme court of California. You don't like the way it went. You file suit in federal court because there's no preclusion yet. There's no hasn't appeals haven't exhausted. So in all the states that don't apply preclusion until the appellate process is over, you can really gang gang the system, you know, and it costs money. And she just keeps saying about,  you just apply inclusion. You have to go find a lawyer to go like defend in a lot of suits. It's not like people have money grows on trees for hospitals. So you got to go litigate all this when, you know, it's just in this particular case, you brought three federal lawsuits. One of them was a direct appeal. The other two, you know, weren't, but here there's just, it's voiding a state court judgment. So you can't do that. The petition in this case was filed by very experienced and sophisticated advocate. A second question could have been added. Should Rucker Feldman be overruled? It wasn't overruled. When have we reached out to overrule a decision when we haven't even been asked to do it? Well, I know the state, the states haven't been,  it's fair. I mean, I'm sitting here and going to tell you about how hard it is to get a state amici. You've got to go through a long process and give them sufficient time. So if we had known that Rooker was on the table, we might've written a different note telling the states to apply because the other side wants to overrule a case that protects the jurisdiction of their state highest court. So you don't even have any state in front of you here to say, no, you're not going to overrule Rooker. I mean, I'm sorry. I don't think you're going to do that. Not in an April case. It's not happening. I don't, don't dare my colleagues. I'm sorry. A little too much. I'm all yours. Anything further on the right here? Anything further? Thank you. Thank you, counsel rebuttal.   Thank you. Mr. Chief justice. My friend has doubled down on the theory that Rooker Feldman is justified as an exercise of appellate jurisdiction or that it explains where the doctrine comes from, but that can't be squared with section 1257 because you don't have to even consult that statute. And critically it can't be squared with history. And my friend suggested that the cases we've cited where district courts exercised jurisdiction to issue collateral attacks, all predated Rooker, but that's why they're so significant. This court in Rooker and in Feldman never grappled with that history and suggested that it meant to overrule it and entirely stripped the district courts of any ability to consider in the exercise of their original jurisdiction, that kind of collateral attack Smith versus Apple is a directly on point precedent here where the lower court said that it had, it lacked jurisdiction over that kind of collateral attack. And this court said, no, the district court had jurisdiction to review that state court judgment and consider issuing an injunction that would prevent its enforcement. Jurisdiction was secured. The problem was a merits issue that the anti-injunction act barred that suit. So I think that that is strong evidence that as a matter of history and tradition, collateral attacks are nothing new and they've always been understood to lie within a district court's original jurisdiction. My friend also read out several sentences from different precedents, kind of plucked them out where the issue wasn't presented and suggest that they support her rule. We have a lot of sentences on our side to the court has several times referred to high court judgments. It said an Exxon multiple times that the state court proceedings there had concluded. And so we think that the court's precedent likewise can be read our way, but I think it's also worth stepping back here and not losing sight of the way this rule operates. Rooker Feldman is a doctrine of jurisdiction and it's already at the very outer bounds of how this court thinks about jurisdictional rules. It's not supposed to be a judgment doctrine. Instead, it's supposed to come directly from Congress and from clear statutory text and to vastly expanded in this way would run away from the text of section 1257 and would also come with the huge costs of imposing this jurisdictional rule and all of the baggage that comes along with it in terms of no party presentation and inefficiencies that come from having to adjudicate the jurisdiction jurisdictional question first. It's also completely unnecessary because doctrines like preclusion and abstention are meant to deal with competing or overlapping jurisdiction. And that's how the courts have long handled these issues in our dual system of state and federal courts. Exxon tried to reign all of this in when in a prior situation, the lower federal courts were applying Rooker Feldman too broadly, but they haven't taken the hint. And we have seven state court, seven federal circuit courts on our side and our rule is clear that you can only invoke Rooker Feldman in a situation where one of the things being reviewed comes from about 51 state high courts. But on respondents rule, courts are going to have to think about Rooker Feldman for any judgment involving any of the more than 15,000 state lower courts. That would be a vast expansion of this doctrine. It would be inconsistent with the text of section 1257. It would run counter to history. It's a solution in search of a problem because preclusion doctrines already guard against relitigation and it would be unwarranted. So we would ask the court to reverse. Thank you, counsel. The case is submitted.